UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JIMMY HERRERA, an individual, JH DISTRIBUTORS CORPORATION, a California Corporation, BRIAN BOTELHO, an individual, ALL PRO BAKERY DISTRIBUTING INC., a California corporation, CHARLES LARAY DAVIS, an individual, LA RAY DAVIS BREAD INC, a California corporation, KEVIN DENSMORE, an individual, DENSMORE DISTRIBUTION INC, ALEXANDRIA GUYTON, an individual, GUYTON GIRL DISTIBUTIONS INC, a California corporation, MICHAEL HERNANDEZ, an individual, HERNANDEZ DISTRIBUTION INC, a California Corporation, DAVID MUNOZ, an individual, EARLY BIRD DELIVERY, a California corporation, ANTHONY PORRECA, an individual, BREAD RAXX INC., a California Corporation, FERNANDO RAMIREZ, an individual, SOFT AND SMOOTH DELIVERIES INC, a California Corporation, SYLVIE SERRANO, an individual, SERRANO INC, a California Corporation, ALEJANDRO SOLETA, an individual, ALJAND DISTRIBUTING INC, a California corporation, ANTHONY TAVAREZ, an individual, BIG TIME DISTRIBUTING, a California | No. 2:21-cv-02217 WBS CKD<br><br>MEMORANDUM AND ORDER |

| | |
|---|---|
| 1 | corporation, FRANCISCO TROVAO, and an individual, THUNDER BREAD INC, a California corporation, HAROLD WILSON, an individual, and HAROLD K WILSON III INCORPORATED, a California Corporation, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Plaintiffs, |
| 6 | v. |
| 7 | FLOWERS BAKING CO. OF MODESTO, LLC; FLOWERS BAKING CO. OF CALIFORNIA, LLC; FLOWERS BAKING CO. OF STOCKTON, LLC; and DOES 1 through 100, inclusive, |
| 8 | |
| 9 | |
| 10 | Defendants. |

----oo0oo----

Plaintiff Sylvie Serrano[1] brings seven state law claims against defendant Flowers Baking Co. of Modesto[2] for multiple violations of the California Labor Code, the Industrial Welfare Commission's Wage Order No. 9, and the Unfair Competition Law. (Compl. (Docket No. 1-1).)

Plaintiff moves for partial summary judgment on defendant's first and fourth affirmative defenses. (Pl.'s Mot.

---

[1] The parties stipulated to the dismissal of claims as asserted against plaintiffs Alejandro Soleta and Aljand Distributing Inc from this case with prejudice. (Docket No. 19.) In addition, the parties agree that all remaining plaintiffs except Serrano and Serrano Inc are subject to arbitration agreements, and therefore Serrano and Serrano Inc's claims are the only claims presently remaining before the court. (Docket Nos. 9, 23.)

[2] Defendants move to dismiss all claims as asserted against Flowers Baking Co. of California, LLC and Flowers Baking Co. of Stockton, LLC. (Docket No. 28-1 at 15.) Plaintiffs do not oppose. (Docket No. 31 at 34.) The claims as asserted against these defendants are accordingly dismissed.

2

1  ("PMSJ") (Docket No. 26).)  Defendant moves for partial summary
2  judgment on plaintiff's expense reimbursement, minimum
3  wage/overtime, meal period, rest break, and itemized wage
4  statement claims.  (Def.'s Mot. ("DMSJ") (Docket No. 28).)
5       As the parties are familiar with the relevant facts,
6  procedural history, and applicable legal standard, the court will
7  not recite them in detail here.

I. <u>Evidentiary Issues</u>

   A. <u>Undisclosed Evidence</u>

     Plaintiff argues that defendant's motion for partial summary judgment relies on declarations from five declarants who plaintiff alleges were not properly and timely disclosed.  (<u>See</u> Docket Nos. 31 at 9-11, 31-2 at 1-5.)  Plaintiff accordingly requests that the court exclude this evidence, both in relation to the instant motions for summary judgment and at trial.  (<u>Id.</u>)

     The court declines to do so.  First, defendant asserts that plaintiff's own papers reference declarations from declarants not previously disclosed and evidence not produced during discovery.  (<u>See</u> Docket No. 37 at 9-11.)  Second, trial is not until October 2024.  (<u>See</u> Docket No. 25).  If the parties wish to conduct supplemental discovery in order to further test this evidence, including by deposing these declarants, they are free to move for leave to do so.  Third, plaintiff fails to convincingly show that he has been actually prejudiced by defendant's allegedly improper failure to disclose, much less in any way that cannot be remedied by conducting additional depositions.

   B. <u>Objections</u>

1          The parties raise various evidentiary objections
2    against each other's statements of material facts and supporting
3    evidence.  (See Docket Nos. 31-2 at 5-10, 37-11, 41.)
4          As a preliminary matter, the court will disregard any
5    objections that are duplicative of the summary judgment standard.
6    Under Federal Rule of Evidence 401, evidence is relevant if it
7    "has any tendency to make a fact more or less probable" and that
8    fact "is of consequence in determining the action."  Fed. R.
9    Evid. 401.  The actions before the court now are motions for
10   summary judgment.  On summary judgment, the court determines
11   whether the evidence presented, viewed in the light most
12   favorable to the non-moving party, creates a "genuine dispute as
13   to any material fact" that must be resolved at trial.  Fed. R.
14   Civ. P. 56(a).  The court must therefore consider, and only
15   consider, evidence bearing on (1) facts that are (2) material.
16   If the evidence offered does not bear on a material fact (e.g.,
17   comprises baseless speculation, bears on a legal conclusion, or
18   bears on a fact not necessary to dispose of any claim), it is by
19   definition not relevant to the present action for summary
20   judgment.  Sandoval v. Cnty. of San Diego, 985 F.3d 657, 665 (9th
21   Cir. 2021) ("[O]bjections for relevance are generally unnecessary
22   on summary judgment because they are "'duplicative of the summary
23   judgment standard itself.' . . . [P]arties briefing summary
24   judgment motions would be better served to 'simply argue' the
25   import of the facts reflected in the evidence rather than
26   expending time and resources compiling laundry lists of relevance
27   objections.") (citing Burch v. Regents of Univ. of Cal., 433 F.
28   Supp. 2d 1110, 1119 (E.D. Cal. 2006) (Shubb, J.)).

1  Additionally, "if the contents of a document can be presented in
2  a form that would be admissible at trial -- for example, through
3  live testimony by the author of the document -- the mere fact
4  that the document itself might be excludable hearsay provides no
5  basis for refusing to consider it on summary judgment." Id. at
6  666.
7       Accordingly, the court will overrule the parties'
8  objections to each other's evidence.  Here, all of the objections
9  are directed at sworn declarations and exhibits included in them.
10 (See Docket Nos. 31-2 at 5-10, 37-11, 41.)  Every single
11 declarant whose declaration is at issue represents that they have
12 personal knowledge of all of the facts contained in their
13 respective declarations, and that they can testify to the same at
14 trial.  (Docket Nos. 28-14 ¶ 1, 28-16 ¶ 1, 31-3 ¶ 2, 35-2 ¶ 2.)
15 Absent any challenges to the substantive authenticity or
16 reliability of these declarations, the court will not exclude
17 them from its analysis of the parties' motions.  The parties
18 would be better served if their respective counsel centered on
19 meaningful problems with the content of the evidence and allowed
20 the court to focus on the merits of their arguments.
21 II.   Requests for Judicial Notice
22       The parties have filed four requests for judicial
23 notice.  (Docket Nos. 26-6, 31-5, 33-37, 35-4.)  The court will
24 take judicial notice of the following categories of documents
25 only for the contents of the documents themselves and
26 representations made in them, rather than for the truth or
27 accuracy of those contents or representations: (1) Securities and
28 Exchange Commission filings by Flowers Foods; and (2) documents

filed in Goro v. Flowers Foods Inc., No. 17-CV-2580 TWR (JLB), 2021 WL 4295294 (S.D. Cal. Sept. 21, 2021) and 2021 WL 5761694 (S.D. Cal. Dec. 3, 2021).  The court will not take judicial notice of all other documents as moot.

III. Plaintiff's Motion

Plaintiff requests partial summary judgment on defendant's first and fourth affirmative defenses, which respectively assert that (1) every claim is deficient because there was never an employment relationship between the parties; and (2) every claim is preempted by various federal statutes.

A.   First Affirmative Defense: Employment Relationship

The parties appear to agree that the ABC Test as set forth by the California Supreme Court in Dynamex Operations West v. Superior Court, 4 Cal. 5th 903 (2018), is the appropriate test to discern the existence of an employment relationship, at least as to most of plaintiff's claims.  (See Def.'s Opp'n (Docket No. 33) at 17-18; Pl.'s Reply (Docket No. 35) at 8-9 & n.3.)[3]

1.   Failure to Reimburse Business Expenses (Claim 1)

However, the parties disagree whether the ABC Test applies to plaintiff's first claim for failure to reimburse business expenses, which plaintiff asserts under both the California Labor Code and the Industrial Wage Commission wage orders.

The California Supreme Court in Dynamex adopted the ABC Test "for purposes of California wage orders."  Dynamex, 4 Cal.

---

[3]  Pursuant to Dynamex, defendant carries the burden of proof to show that plaintiff was an independent contractor instead of an employee.  See id. at 955.

5th at 913 (emphasis in original).  Dynamex applies retroactively.  Vazquez v. Jan-Pro Franchising Int'l, Inc., 10 Cal.5th 944, 958 (2021).  The California legislature codified the ABC Test two years after Dynamex in Cal. Lab. Code § 2775 and expanded the test's application to claims also arising under the Labor Code and the Unemployment Insurance Code.  However, the expansion of Dynamex to Labor Code and Unemployment Insurance Code claims does not apply retrospectively.  See Bowerman v. Field Asset Servs., Inc., 60 F.4th 459, 472 & nn.10-11 (9th Cir. 2023).  Because plaintiff's reimbursement claim arose before Section 2775's expansion of the ABC Test's scope[4], the ABC Test applies to plaintiff's claim here only if it is sufficiently grounded in a wage order.  See Lawson v. Grubhub, Inc., 13 F.4th 908, 912 (9th Cir. 2021).

      The court finds that plaintiff's reimbursement claim is sufficiently grounded in Wage Order No. 4.  In relevant part, Wage Order No. 4 states: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer . . . ."  Cal. Code Regs. tit. 8, § 11040(9)(B).  Plaintiff asserted his reimbursement claim under an analogous wage order provision from the start of this lawsuit.[5]  (Compl. ¶¶

---

[4] Section 2775's effective date is January 1, 2020.  Cal. Lab. Code § 2785(c).  The parties' relationship ended in May 2018.  (Def.'s Statement of Undisputed Facts ("DUF") (Docket No. 228-2) 15, 18.)

[5] The parties agree that Wage Order No. 4 is the relevant wage order in this case.  (See DMSJ at 13; Pl.'s Opp'n (Docket No. 31) at 13 n.2.)  Initially, plaintiff's complaint cited to Wage Order No. 9.  (See Compl. (Docket No. 1-1) at 15.)  The only

7

53-58.)  Cf. Bowerman v. Field Asset Servs., Inc., 60 F.4th 459, 472 (9th Cir. 2023) (noting "belated[]" invocation of wage order in class certification motion while concluding claim not "rooted in" it).  Plaintiff also claims expenses for mandatory rental fees for the handheld device for ordering bakery products, which defendant required plaintiff to use (Pl.'s Statement of Undisputed Facts ("PUF") (Docket No. 26-5) 52); fuel, maintenance, and repair costs for the two vehicles he operated to make deliveries (Pl.'s Statement of Disputed Facts ("PDF") (Docket No. 33-38) 17); and "shrink," which refers to charges for delivered bread that was not ultimately sold (id.).  (See generally Docket No. 33-35 (Expert Report of Anna Tom).)  These expenses, or at least some of them, relate to "tools or equipment" such that plaintiff's claim arises at least partly out of Wage Order No. 9(9)(B).[6]

Accordingly, the court concludes that nothing prevents the application of the ABC Test to plaintiff's reimbursement claim.  See Gonzales v. San Gabriel Transit, Inc., 40 Cal. App. 5th 1131, 1160 (2d Dist. 2019) ("ABC Test . . . applies to equivalent or overlapping non-wage order allegations arising

---

relevant difference between the two wage orders is the applicable industry; the specific sub-provisions contain virtually identical language.  Compare Cal. Code Regs. tit. 8, § 11040(9)(B) with id. § 11090(9)(B).

[6]   At the very least, the mandatory rental of a handheld device to place bakery product orders plainly implicates the "tools or equipment" provision of Wage Order No. 4.  Cf. Bowerman, 60 F.4th at 472 ("insurance, cellphone charges, dump fees, and milage/fuel" not covered by cognate wage order's "tools or equipment" provision).

8

under the Labor Code. [. . .] [T]he court here must harmonize and apply the same test to Gonzales's contentions that he and other class members were misclassified as independent contractors in violation of numerous Labor Code provisions.").

### 2. ABC Test Application: Work in the Usual Course of Hiring Entity's Business (All Claims)

Having concluded that the ABC Test is the applicable test for all of plaintiff's claims, the court now applies it to discern whether an employment relationship existed between the parties. "The ABC test <u>presumptively</u> considers all workers to be employees, and permits workers to be classified as independent contractors only if the hiring business demonstrates that the worker in question satisfies each of three conditions: (a) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of the work and in fact; and **(b) that the worker performs work that is outside the usual course of the hiring entity's business**; and (c) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." <u>Dynamex</u>, 4 Cal. 5th at 955–56 (2018) (emphasis added). "[T]he ABC test is conjunctive, so a finding of any prong against the hiring entity directs a finding of an employer-employee relationship." <u>Vazquez v. Jan-Pro Franchising Int'l, Inc.</u>, 986 F.3d 1106, 1125 (9th Cir. 2021). Plaintiff argues that defendant's defense fails either at Prong B or C.

The court begins, and ends, with Prong B. The Ninth Circuit has identified the following factors to consider with

9

respect to Prong B: "[i] whether the work of the employee is necessary to or merely incidental to that of the hiring entity, [ii] whether the work of the employee is continuously performed for the hiring entity, and [iii] what business the hiring entity proclaims to be in." Vazquez v. Jan-Pro Franchising Int'l, Inc., 986 F.3d 1106, 1125 (9th Cir. 2021).

### i. Necessary vs. Incidental Work

Whether a worker is "necessary" can be viewed in terms of "a common-sense observation of the nature of the businesses" or in "more economic terms." Vazquez, 986 F.3d at 1125-26 (citing cases). From a commonsense perspective, plaintiff's labors for defendant plainly appear to have been necessary to defendant's business. Defendant and its corporate parents negotiated all of the contracts with the retail customers. (PUF 42.) They also owned and maintained the warehouses which stored the products for delivery to the retail customers. (PUF 87.) Against this backdrop, it appears that the actual physical provision of bakery products from defendant's warehouse to the retail customers was a central component of the entire enterprise. Defendant clearly behaved as if this is true -- for one, defendant worked actively to help facilitate plaintiff's delivery of its bakery products by arranging vehicle loans and insurance for the delivery truck that plaintiff used. (PUF 86, 88.) And more tellingly, when a territory was not covered by a distributor, or a distributor failed to show up, defendant directed employees leased through ABM to make the deliveries. (PUF 15.) These facts support Flowers Foods's public statements that plaintiff and distributors like him are "critical within our

DSD segment." (PUF 14.)

From a more economic lens, DSD comprises 85% of defendant's and Flower Foods's business, which Flowers Foods describes to the public as its "core business." (PUF 6, 27.) Plaintiff's "margin" per "sale" of a bakery product was determined entirely by defendant. (PUF 78.) That is, defendant unilaterally set the price at which plaintiff "purchased" the bakery products from defendant (Agreement § 4.1.), and also set "suggested wholesale prices" which were negotiated between defendant and retail customers with no input from plaintiff, and which were in fact firm ceilings for what plaintiff could charge the retail customers. (Grover Decl. I Ex. Q (Distributor Checklist); PUF 42.) And more generally, defendant's revenue went directly up or down based on how much bakery product that distributors picked up and delivered to retail customers. (PUF 44.) See People v. Uber Techs., Inc., 56 Cal. App. 5th 266, 293 (1st Dist. Nov. 20, 2020) (finding Prong B not satisfied and noting "Uber's revenues do not depend on the distribution of its software, but on the generation of rides by its drivers. [. . .] Put simply, . . . Uber only makes money if its drivers actually transport passengers.") (internal citations omitted); Vazquez, 986 F.3d at 1126 (9th Cir. 2021) (same: "Jan-Pro fundamentally depends on a supply of unit franchisees for its business . . . . Jan-Pro is not indifferent to how much work unit franchisees do or how well they perform that work. It is not simply renting out its trademark and goodwill to independent entities that could use it to perform cleaning services. Rather, Jan-Pro is actively and continuously profiting from the performance of those cleaning

services as they are being performed."). See also Goro v. Flowers Foods, Inc., No. 17-CV-2580 TWR (JLB), 2021 WL 4295294 (S.D. Cal. Sept. 21, 2021) (same re: distributors' necessity to Flowers Foods's core DSD business). These facts reveal a level of economic dependency on and integration with distributors surpassing mere mutual economic benefit that characterizes run-of-the-mill franchise or independent contractor relationships.

### ii. Continuously Performed

The record also demonstrates that plaintiff worked as a distributor more or less continually from March 2015 to May 2018, usually working six days a week for up to fourteen hours a day prior to a partial sale of his distributorship, and 9.5 hours a day after the partial sale. (PUF 47, 50-51.) This factor thus also supports the conclusion that plaintiff's labor was part of defendant's usual course of business. See Vazquez, 986 F.3d at 1126-27 (continuity of performance helps distinguish "traditional contractors like electricians and plumbers, who perform incidental services for otherwise unrelated businesses" from actual employees) (citation omitted).

### iii. Business of Hiring Entity

While defendant presents itself to the court as fundamentally a manufacturing company (see Def.'s Opp'n at 9), its own parent company represents to the Securities and Exchange Commission and the investing public that "[o]ur ability to make, move and sell products is critical to our success." (PUF 26 (2017 and 2018 10-K statements) (emphasis added).) It also, as previously noted, presents distributors like plaintiff as part of its "core business" (PUF 27 (2018 investor fact sheet)) and as

12

"critical within our DSD segment" (PUF 14 (10-K statements)). (See also Grover Decl. I Ex. VV at 846-51 ("Flowers Foods, Inc. produces and markets bakery products in the United States. It operates through two segments, Direct-Store-Delivery (DSD) and Warehouse Delivery.").)

The court concludes that defendant cannot satisfy Prong B of the ABC Test.[7][8]  Defendant therefore has failed to meet its burden of demonstrating genuine issues of material fact on whether plaintiff was an independent contractor, and the court will accordingly dismiss defendant's first affirmative defense.

### B. Fourth Affirmative Defense: Preemption

Defendant's fourth affirmative defense asserts that all of plaintiff's claims are preempted by the Federal Aviation Administration Authorization Act ("F4A"), 49 U.S.C. § 14501 et seq.; the Motor Carrier Safety Act, 49 U.S.C. § 31501 et seq.; and the Truth-in-Leasing Regulations ("TILR"), 49 C.F.R. Part 376.  (Answer (Docket No. 1-2) ¶ 4.)  Although defendant's preemption defense does not refer to the ABC Test, plaintiff argues that the court should dismiss the defense because the ABC Test is not preempted by any of the federal laws at issue.  (PMSJ

---

[7]  As a final resort, defendant attempts to cast its relationship with distributors as a franchise one.  (See Def.'s Opp'n at 20-23 ("[Defendant is] no more in the same business as [distributors] than General Motors is in the same business as car dealerships").)  The court is unpersuaded.  The Ninth Circuit has clearly established that "the franchise context does not alter the Dynamex analysis" with respect to the ABC Test.  Vazquez, 986 F.3d at 1124.

[8]  Finding that defendant has not met its burden under Prong B of the ABC Test, the court need not consider the parties' arguments regarding Prong C.

13

at 35-37.)  Defendant basically agrees that the ABC Test is not preempted by these federal laws, but also maintains that "the Fourth Affirmative Defense has other applications in this case. For example, [defendant] is moving for summary judgment on Plaintiff's overtime claims in conjunction with the Motor Carrier Safety Act . . . assuming arguendo that Plaintiff was an employee . . . ."  (See Def.'s Opp'n at 32-33 & n.33.)

It is unclear to the court what role, if any, the ABC Test plays in relation to this defense, and the parties' scant briefing on this defense provides no clarity.  And more to the point, plaintiff fails to meet its burden of showing that there is no genuine factual dispute such that summary adjudication on this affirmative defense is warranted.  Accordingly, the court will not dismiss defendant's fourth affirmative defense here and will instead proceed to the merits of defendant's own motion for partial summary judgment, which articulates defendant's preemption argument more fully.

IV. Defendant's Motion[9]

    A.    Reimbursement for Vehicle Purchases/Leases (Claim 1)

Defendant does not move for full summary judgment on this claim.  Rather, defendant requests a partial ruling establishing that (1) the ABC Test does not apply to this claim, and (2) certain of plaintiff's expenses relating to purchasing,

---

[9] Plaintiff makes a threshold argument that defendant's motion should be denied in its entirety because it assumes that plaintiff was an employee, and the court must not issue advisory opinions premised on hypotheticals. (Pl.'s Opp'n at 11-12.)  The point is moot, as the court will grant summary judgment for plaintiff on defendant's first affirmative defense regarding the existence of an employment relationship.

14

1  leasing, renting, or otherwise obtaining the vehicle with which
2  he made his deliveries are not recoverable.  (See DMSJ at 20-22.)
3        The court declines to do so.  On the first point, the
4  court already considered the arguments that defendant raises here
5  and determined that the ABC Test applies to this claim.  The
6  point is accordingly moot.
7        On the second point, the court will not issue piecemeal
8  judgments that do not dispose of any party, claim, or affirmative
9  defense.  To do otherwise would only cause confusion at trial
10 without any ancillary preservation of judicial resources.[10]  The
11 Supreme Court has recognized that a district court may deny
12 summary judgment "where there is reason to believe that the
13 better course would be to proceed to a full trial."  Anderson v.
14 Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citations
15 omitted).  The court will exercise that discretion here and
16 accordingly will not conclude that plaintiff is barred from
17 recovering on any category of expenses under this claim at this
18 time.
19    B.   Overtime, Meal, and Rest Break Claims: Interstate
20         Commerce (Claims 2-4)
21        Defendant moves for summary judgment on plaintiff's
22 overtime, meal, and rest break claims on the grounds that they

---

[10]   For instance, plaintiff's alleged damages for claimed expenses rely heavily on the substance of plaintiff's expert damages report.  (See Docket No. 28-12; Pl.'s Opp'n at 30.)  A jury would need to consider the report's contents no matter what the court decides now in order to evaluate categories of claimed expenses that defendant does not challenge right now; however, the jury would need to do so under the instruction that it must disregard certain portions of the report.

15

are preempted by the Motor Carrier Act, 49 U.S.C. § 31502 et seq. (Claim 2) and 83 Fed. Reg. 67,470-01, which was promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") (Claims 3-4).

However, common to all of these arguments is the indispensable premise that plaintiff distributed goods in the stream of interstate commerce.  (See DMSJ at 14-18, 20.)  If there is a genuine dispute of material fact on whether plaintiff participated in interstate commerce, then the court must deny summary judgment on every one of these claims.[11]  Accordingly, the court considers whether the two delivery segments -- out-of-state bakeries' shipment of bakery products to defendant's California warehouses on the one hand, and plaintiff's wholly intrastate deliveries of those products from California warehouses to California retail customers on the other hand -- comprise one

---

[11]   See Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 10669255, at *4 (C.D. Cal. Mar. 19, 2009) ("To establish that the [DOT] has jurisdiction over an employee and the overtime provisions therefore do not apply to that employee, an employer must show that (1) the employer is a motor carrier pursuant to 49 U.S.C. § 31502 and (2) the employee was engaged in safety-affecting activities in interstate commerce."); Sobaszkiewicz v. FedEx Corp., No. 18-CV-07553-PJH, 2022 WL 4004773, at *4 (N.D. Cal. Sept. 1, 2022) ("FedEx argues that the plaintiffs in this case fall within the scope of the motor carrier exemption, thus making them ineligible to assert a claim for overtime.  FedEx argues that the 'hours of service' regulations apply to 'all motor carriers and drivers.'  A 'driver' is defined as 'any person who operates any commercial motor vehicle.' And a 'commercial motor vehicle' is in turn defined as a motor vehicle with a gross vehicle weight rating of 10,001 pounds or more (sometimes also referred to as a 'heavy vehicle') that is used to transport goods in interstate commerce.  See 49 C.F.R. § 390.5, 395.  In effect, that results in three elements to determine whether the 'hours of service' regulations apply: (1) a driver, (2) transporting goods in interstate commerce, (3) using a heavy vehicle.").

1  continuous stream for purposes of the interstate commerce
2  analysis.
3       Whether transportation is ultimately interstate or
4  intrastate is "determined by the essential character of the
5  commerce, manifested by shipper's fixed and persisting
6  transportation intent at the time of the shipment, and is
7  ascertained from all of the facts and circumstances surrounding
8  the transportation." S. Pac. Transp. Co. v. I.C.C., 565 F.2d
9  615, 617 (9th Cir. 1977). "If . . . a company places orders with
10 an out-of-state vendor, with delivery to the company's intrastate
11 warehouse for future delivery to customers yet to be identified,
12 the transportation chain culminating in delivery to the customer
13 is considered intrastate in nature." Watkins v. Ameripride
14 Servs., 375 F.3d 821, 827 (9th Cir. 2004) (summarizing Klitzke v.
15 Steiner Corp., 110 F.3d 1465 (9th Cir. 1997), S. Pac., 565 F.2d
16 615, and Jacksonville Paper, 317 U.S. 564). The court must
17 "consider[] the entire panoply of 'facts and circumstances
18 surrounding the transportation.'" Id. at 825 (quoting Klitzke,
19 110 F.3d at 1469).
20      Here, there is a genuine issue of material fact at
21 least on the "fixed and persisting transportation intent" of the
22 out-of-state bakeries that baked the products in the first place.
23 Defendant contends that "[t]he out-of-state bakeries are aware
24 that the products they produce in response to such orders are for
25 end customers, and not simply a warehouse, given the structure of
26 the DSD system, the perishable nature of the goods, and the
27 specific quantity ordered by each Distributor." (Rich Decl.
28 (Docket No. 28-14) ¶ 9; see also Thacker Decl. (Docket No. 28-19)

17

1 ¶¶ 5-7 (Dave's Killer Bread expects bread baked out-of-state will
2 ultimately be distributed to end customers by distributors)).
3 Therefore, defendant concludes, there is no genuine dispute that
4 the out-of-state bakeries intended to ultimately ship bakery
5 products to the California retail customers.  (See DMSJ at 14-
6 15.)

7 However, defendant also presents evidence showing that
8 plaintiff "purchase[d] fresh products from the subsidiaries and
9 s[old] those products directly to customers shortly after
10 production . . . ." (id. ¶ 7), and more importantly, that title
11 to the goods transferred to plaintiff when plaintiff picked the
12 goods up (Brobst Decl. (Docket No. 28-16) ¶¶ 6, 8).  If the out-
13 of-state bakeries were aware of these aspects of the DSD system
14 as well, a reasonable juror could infer that their "fixed and
15 persisting transportation intent" centered on defendant's
16 warehouses as the destination where title officially transferred,
17 not the end-user retail customers.

18 The record also presents factual issues on who actually
19 submitted orders to the out-of-state bakeries.  Defendant
20 contends that plaintiff placed orders through defendant's
21 handheld device which "were subsequently placed with the out-of-
22 state producing bakeries;" upon receipt, the out-of-state
23 bakeries baked products to fill the order.  (DUF 4-5 (emphasis
24 added).)  Defendant's evidence does not substantiate who made the
25 subsequent placements.  For his part, plaintiff contends that all
26 of his orders, which were placed exclusively through defendant's
27 handheld device, went directly to defendant.  (Serrano Decl.
28 (Docket No. 31-4) ¶ 5; Grover Decl. II (Docket No. 31-3) Ex. D at

72-73, 78-79 ("[distributors] transmit those orders [through the devices] into the company and we build those orders for them") (emphasis added).)  Further evidence indicates that the out-of-state bakeries received orders in bulk, and not broken down by specific distributors or retail customers.  (Id. Ex. R at 259-60.)

This contradictory "panoply of facts and circumstances surrounding the transportation," Watkins, 375 F.3d at 825, raises genuine questions about whether the out-of-state bakeries actually intended the retail customers' stores as the terminus for the products at the time that they shipped them to defendant's warehouses and depots.  Therefore, there is a genuine issue of material fact on whether plaintiff participated in the stream of interstate commerce.[12] [13]  Accordingly, the court will

---

[12]  This accords with Goro v. Flowers Foods, Inc., No. 17-CV-2580 TWR (JLB), 2021 WL 5761694 (S.D. Cal. Dec. 3, 2021), where a court in the Southern District reached the same conclusion regarding the stream of commerce connecting distributors and different Flowers Foods subsidiaries, on substantially identical factual grounds.  The court also finds the Goro court's analysis distinguishing defendant's cited cases, also recited here near-verbatim, persuasive.  See Goro, 2021 WL 5761694, at *4-5 (distinguishing cases).

[13]  The court thus need not address the parties' more narrow, claim-by-claim arguments, including whether plaintiff may evade Wage Order No. 4's carve-out for employees regulated by 49 C.F.R. §§ 395.1-395.13 because plaintiff was a short-haul driver.  All the same, the court finds defendant's argument, rooted in Espinoza v. Hepta Run, Inc., 74 Cal. App. 5th 44 (2d Dist. 2022), that this question is irrelevant because short-haul drivers are still generally subject to hours-of-service rules persuasive.  The Espinoza court speaks clearly on this issue: "It is undisputed that certain hours of service rules apply to short haul drivers, such as the daily limits on driving time and the daily and weekly limits on on-duty time.  Thus, the [hours-of-service] rules, as a general matter, apply to short haul

1  not grant summary judgment on defendant's second, third, and
2  fourth claims.
3        E.    <u>Failure to Provide Itemized Wage Statements</u> (Claim 5)
4              Defendant argues that plaintiff's fifth claim is time-
5  barred.  (DMSJ at 22.)  Plaintiff does not oppose.  (Docket No.
6  31 at 34.)  Accordingly, the court will grant summary judgment
7  for defendant on this claim.
8              IT IS THEREFORE ORDERED that plaintiff's motion for
9  partial summary judgment (Docket No. 26) be, and the same hereby
10 is, GRANTED as to defendant's first affirmative defense and
11 DENIED as to defendant's fourth affirmative defense.
12             IT IS FURTHER ORDERED that defendant's motion for
13 partial summary judgment (Docket No. 28) be, and the same hereby
14 is, GRANTED as to plaintiff's fifth claim and all claims as
15 asserted against defendants Flowers Baking Co. of California, LLC
16 and Flowers Baking Co. of Stockton, LLC.  It is DENIED otherwise
17 as to plaintiff's first, second, third, and fourth claims.
18 Dated:  May 28, 2024

                                    WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE

---

28 drivers."  <u>Id.</u> at 56.